NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000865
30-JUN-2017
12:13 PM

NOS. CAAP-15-0000865 and CAAP-15-0000866

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CAAP-15-0000865
STATE OF HAWAIʻI, Plaintiff-Appellant, v.
MATTHEW SEAN SASAI, Defendant-Appellee
(CASE NO. 1DCW-14-0004628)

and

CAAP-15-0000866
STATE OF HAWAII, Plaintiff-Appellant/Cross Appellee,  v.
BRENT N. TANAKA, Defendant-Appellee/Cross Appellant
(CASE NO. 1DCW-14-0005843)

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION

SUMMARY DISPOSITION ORDER
(By:  Fujise, Presiding Judge and Leonard, J.,
with Ginoza, J., dissenting)

In these consolidated cases, Plaintiff-Appellant/Cross-Appellee State of Hawaiʻi (State) and Defendant-Appellees/Cross-Appellant Brent N. Tanaka[1] (Tanaka) appeal from the October 6, 2015 "Findings of Fact, Conclusions of Law and Order (1) Granting Defendant Sasai's Motion to Dismiss for Violation of Defendant's Right to Due Process and Equal Protection of the Laws [(Sasai Modica Motion)]; and (2) Denying Defendant Sasai's Motion to Dismiss for Violation of Defendant's Right to Equal Protection of the Laws [(Sasai Equal Protection Motion)]; and (3) Granting in Part and Denying in Part Defendant Tanaka's Motion to Dismiss for

---

[1]     Defendant-Appellee Matthew Sean Sasai (Sasai) did not bring a cross-appeal.

Violation of Defendant's Right to Due Process and Equal Protection of the Laws [(Tanaka Combined Motion)]" (Order) entered by the District Court of the First Circuit, Honolulu Division (District Court).[2]  The State appeals the granting of the Sasai Modica Motion and the partial granting of the Tanaka Combined Motion.  Tanaka cross-appeals from the denial of the Sasai Equal Protection Motion and the partial denial of the Tanaka Combined Motion.[3]

On appeal, the State contends the District Court erred by:  (1) applying the incorrect standard of proof for constitutional violations; (2) interpreting both HRS § 712-1200(1)(a) and (b) to apply to patrons of prostitutes; (3) finding that the "Modica rule"[4] applied to HRS § 712-1200(1)(a) and (b) because Deferred Acceptance of Nolo Contendere (DANC) and Deferred Acceptance of Guilty (DAG) pleas were not available to violations of HRS § 712-1200(1)(b); and (4) dismissing the charges with prejudice.

On cross-appeal, Tanaka contends the District Court erred by: (1) concluding his constitutional right to equal protection was not violated by gender-based enforcement of HRS § 712-1200(1)(a) and (b); and (2) making Findings of Fact (FOF) Nos. 8, 9, 13, and 14 because of a series of technical errors in the labeling of exhibits or the contents therein.

After reviewing the parties' arguments, the record on appeal, and relevant legal authorities, and giving due consideration to the points raised and arguments made by the parties we resolve the parties' respective appeals as follows and vacate the District Court's Order to the extent it granted the Sasai Modica Motion and partially granted the Tanaka Combined Motion.

---

[2]    The Honorable James H. Ashford presided.

[3]    Prior to dismissal, Defendants had been charged with Prostitution, in violation of Hawaii Revised Statutes (HRS) § 712-1200(1)(b) (2014).  At the time of the charged offense, HRS § 712-1200(1)(b) provided, in relevant part, "(1) A person commits the offense of prostitution if the person:  (b) Pays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct."

[4]    State v. Modica, 58 Haw. 249, 567 P.2d 420 (1977).

A.    The State's Appeal

1.    The State argues, and the Defendants agree, that the District Court erred in its Conclusion of Law (COL) No. 2, which stated, "[o]nce Defendant alleges a constitutional violation, the burden shifts to the State to establish that the law enforcement officers' actions were constitutionally permissible."  We agree with the parties, however given our resolution of the issues, we conclude the error was harmless.

2.    The State contends that the District Court erred in its interpretation of HRS § 712-1200(1)(a) and (b) insofar as the court's construction renders both HRS § 712-1200(1)(b) and HRS § 853-1(a)(13)(V) null and void, negates the Legislature's intent, and unnecessarily renders the statute unconstitutional.

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

State v. Kelekolio, 94 Hawai'i 354, 356-57, 14 P.3d 364, 366-67 (App. 2000) (citation omitted).  It is also

> a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.

State v. Ortiz, 74 Haw. 343, 351-52, 845 P.2d 547, 551-52 (1993) (citation omitted).  To this end,

> [i]t is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole. Statutes should be interpreted according to the intent and meaning, an not always according to the letter, and every part thereof must be viewed in connection with the whole so as to make all parts harmonize, if practicable, and give a sensible and intelligent effect to each.

State v. Davis, 63 Haw. 191, 196, 624 P.2d 376, 380 (1981) (citation omitted).

The language of HRS § 712-1200(1) at the time of these charged offenses read,

> A person commits the offense of prostitution if the person:
>
> (a)    Engages in, or agrees or offers to engage in, sexual conduct with another person for a fee; or
>
> (b)    Pays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct.

HRS § 712-1200(1) (2014).

Here, the District Court's plain language interpretation that subsection (a) could apply to either buyers or sellers of sexual conduct,[5] but that subsection (b) can only apply to buyers is correct. However, the court's determination that subsection (b) was superfluous, without attempting to harmonize the subsections to give effect to them both, was error. Ortiz, 74 Haw. at 351-52, 845 P.2d at 551-52.

HRS § 712-1200(1) could be read as providing two methods of commission: Under subsection (1)(a) where the person agrees to, offers, or engages in sexual conduct for a fee, and under subsection (1)(b) where the person agrees to, offers, or pays someone to engage in sexual conduct. It is clear that

---

[5]    In State v. Espinosa, 120 Hawai'i 478, 480, 210 P.3d 1, 3 (App. 2009), this court observed that HRS § 712-1200(1) once read that a person commits the offense of prostitution if the person "engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee" but that the Legislature, in 1990, deleted the words "in return" "'to make it clear that the customer of a prostitute is also guilty of the offense of prostitution[.]' S. Stand. Comm. Rep. No. 325, in 1989 Senate Journal at 946; H. Stand. Comm. Rep. No. 1205-90, in 1990 House Journal, at 1316."

subsection (1)(b) applies to the so-called patron or customer, as he or she is the person who would agree to, offer to, or pay.

The term "engage" is not defined in the Penal Code, but we are free to consult other sources, such as dictionaries, to ascertain the ordinary meaning of a word. See State v. Jing Hua Xiao, 123 Hawai'i 251, 259, 231 P.3d 968, 976 (2010) ("[I]t is well-settled that, when a term is not statutorily defined, this court may resort to legal or other well accepted dictionaries as one way to determine its ordinary meaning"). For example, "2 . . . b: to do or take part in something--use with *in* – *engage* in healthy activities – *engage* in bad conduct." Merriam-Webster, https://www.merriam-webster.com/dictionary/engage. Thus, taken in context, the person engaging in sexual conduct with another person for a fee would be the "seller" in this transaction.

To "pay" is similarly ascertainable, "2 a: to give in return for goods or service . . . b: to discharge indebtedness for . . . c: to make a disposal or transfer of (money)[.]" Merriam-Webster, https://www.merriam-webster.com/dictionary/pay. Thus, subsection (b) covers the person paying for the sexual conduct, i.e., the customer. This is consistent with the legislative history accompanying the enactment of subsection (1)(b), that is, the purpose of the bill was, amongst other things, to "[e]xtend the offenses of prostitution . . . to reach those who pay, agree to pay or offer to pay a fee to another person to engage in sexual conduct." Conf. Comm. Rep. No. 76, in 2011 House Journal, at 1630. This interpretation is also consistent with a 2016 amendment[6] to HRS § 712-1200(1)(a) to reinsert the words "in return" so that the subsection now reads, "Engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee[.]" Furthermore, the bill amending this section provides the specific legislative purpose:

---

[6] State v. Dunbar, 139 Hawai'i 9, 20, 383 P.3d 112, 123 (App. 2016) ("This court employs subsequent legislative history only to confirm its interpretation of an earlier statutory provision.") (quoting State v. Dudoit, 90 Hawai'i 262, 268 n.3, 978 P.2d 700, 706 n.3 (1999)).

SECTION 49. The purpose of this part is to amend chapter 712, Hawaii Revised Statutes, regarding offenses against public health and morals, to:

. . . .

(2)     Clarify that a person commits the offense of prostitution under section 712-1200(1)(a), Hawaii Revised Statutes, when the person engages in, or agrees or offers to engage in, sexual conduct "in return" for a fee, distinguishing the offense from the offense under section 712-1200(1)(b), Hawaii Revised Statutes, in which the other person pays the fee[.]

2016 Haw. Sess. Laws Act 231, § 49 at 761-62.  Therefore, having already concluded that HRS § 712-1200(1)(a) applies only to the sellers of sexual conduct the subsequent legislative history confirms our construction of the statute.

3.     Application of the Modica Rule

The State asserts the District Court erred by finding that the "Modica rule" applied to HRS § 712-1200(1)(a) and (b) because DANC and DAG pleas were not available for HRS § 712-1200(1)(b) offenses.  Specifically, that the court's finding of a violation of the Modica rule rests on the its error in interpreting HRS § 712-1200(1)(a) to apply to the same underlying conduct as HRS § 712-1200(1)(b).  We agree.

Having determined that HRS §§ 712-1200(1)(a) and (b) apply to different conduct, the District Court's logic finding a violation of equal protection and due process under the Modica rule unravels.  Indeed, in Modica the supreme court found no violation of due process or equal protection where the felony statute contained an essential element of the offense that the misdemeanor statute did not.  Modica, 58 Haw. at 250-51, 567 P.2d at 421-22.  Here, HRS §§ 712-1200(1)(a) and (b) prohibit different conduct, and therefore contain separate essential elements for each offense and can be punished differently.  As such, the District Court's finding of a violation of due process and equal protection on Modica grounds, and the granting and granting in part of the Motions to Dismiss must be vacated.

> 4. The District Court Erred by Dismissing the Charge With Prejudice.

The State argues that the District Court erred by dismissing the charges with prejudice. Based on the foregoing, we agree.

B. Tanaka's Appeal[7]

> 1. The District Court Did Not Err in Denying the Motions on Equal Protection Grounds.

Tanaka contends that the District Court erred by denying the Sasai Equal Protection Motion and denying in part the Tanaka Combined Motion by concluding that his constitutional right to equal protection was not violated by alleged gender-based enforcement of HRS § 712-1200(1)(a) and (b). Specifically, Tanaka argues that the State has engaged in impermissible discriminatory enforcement by enforcing subsection (a) only against females and subsection (b) only against males.

Defendants must satisfy a two-part test: defendants must first, demonstrate that the State generally has not enforced the section against others similarly situated; and second, establish that their selection was "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." Mahiai v. Suwa, 69 Haw. 349, 360, 742 P.2d 359, 368 (1987) (quoting State v. Kailua Auto Wreckers, Inc., 62 Haw. 222, 226-27, 615 P.2d 730, 734-35 (1980)). "[I]f a defendant sustains the burden of establishing intentional or purposeful discrimination based upon an unjustifiable standard, that defendant is entitled to dismissal of prosecution as a matter of

---

[7] The State challenges jurisdiction over this cross-appeal because there is no final judgment in this case pursuant to HRS § 641-11 (2016), and that Defendants did not seek permission to make this appeal under HRS § 641-17 (2016). The State's reliance HRS § 641-11 is misplaced because this appeal is from the district court, and thus HRS § 641-12 (2016) applies. HRS § 641-12(a) provides, in relevant part, "[a]ppeals upon the record shall be allowed from all final decisions and final judgments of district courts in all criminal matters" (emphasis added). Under HRS § 641-12, a judgment is final for the purposes of appeal when it terminates the litigation on the merits and leaves nothing to be done but to enforce by execution what has been determined. State v. Valiani, 57 Haw. 133, 134, 552 P.2d 75, 76 (1976) (internal quotation marks and ellipsis omitted) (quoting Berman v. United States, 302 U.S. 211, 212-13 (1937)). Here, the District Court's order dismissing the charges with prejudice had the required finality to be appealed by either party under HRS § 641-12. Therefore, the State's argument that we do not have jurisdiction to hear this matter is without merit.

7

law under the equal protection clause of both the Federal and State Constitutions." Kailua Auto Wreckers, 62 Haw. at 228, 615 P.2d at 735.

As an initial matter, the court evaluates whether the statute is facially discriminatory. See State v. Tookes, 67 Haw. 608, 614, 699 P.2d 983, 987 (1985). If the defendant is seeking to demonstrate discriminatory enforcement from a pattern of enforcement based on an unjustifiable standard, the pattern must be overwhelming and extreme because mere disparate impact is not sufficient. Id., at 614, 699 P.2d at 988.

Tanaka acknowledges, and we agree, that the language of the HRS § 712-1200(1)(b) is gender-neutral, because it is triggered by a purchase of sexual services without regard to the gender of the buyer. See Tookes, 67 Haw. at 614, 699 P.2d at 987. Therefore, it remains for Tanaka to demonstrate that the State has not enforced HRS § 712-1200(1)(b) against others similarly situated, and the enforcement against him was deliberately based on the unjustifiable standard of his gender.

We review the record to determine whether the District Court was correct when it concluded Tanaka failed to establish that HPD either "targeted men under HRS § 712-1200 so overwhelmingly that an intent to discriminate can be inferred" or engaged in "a pattern of discriminatory conduct so overwhelming that intent to discriminate can be inferred." Tanaka argues "the police made a conscious and deliberate choice to target men and not target women in the undercover 'sting' operations leading to the arrest and prosecution of customers under HRS § 712-1200(1)(b)." To support this claim he cites Detective Okamura and Officer Yuen's testimony that the operations target "Johns" and Detective Okamura admitted "John" implies male customers. Assuming this implication is true, Tanaka did not prove that there are female patrons of prostitution that the police and the State are not pursuing under HRS § 712-1200(1)(b). Detective Okamura and Officer Yuen both testified a woman would be arrested for seeking to purchase sexual conduct. Further, Officer Yuen stated in over fifty undercover prostitution operations she has never been approached by a female John. Thus, as in Tookes,

there was no testimony that police avoided arresting known female customers, there was no testimony that it was department policy to discriminate against male customers, and Officer Yuen testified she would arrest a female soliciting for sexual services. Cf. 67 Haw. at 614, 699 P.2d at 988. Tanaka has not demonstrated that there are similarly situated women against whom the State is not enforcing HRS § 712-1200(1)(b).

Tanaka also argues that discriminatory enforcement can be inferred from the pattern of enforcement. Tanaka relies on Commonwealth v. Unnamed Defendant, 492 N.E.2d 1184 (Mass. App. Ct. 1986), where the Massachusetts appellate court held the state's discriminatory enforcement of prostitution laws required dismissal the complaints. There, in the year prior to the defendant's arrest, statistics indicated out of thirty-seven arrests for prostitution, thirty-six of the arrestees had been female; out of twenty-five arrests for soliciting prostitution, twenty-three of the arrestees had been female; and out of 106 arrests for being a "common nightwalker," 104 of the arrestees had been female. Id. at 1185 n.3. Here, Tanaka seeks to establish a similar pattern that police engaged in "unequal application of impartial laws.". To support this contention, he offers the parties' stipulation that from April 25, 2013 to May 1, 2015, all the individuals charged with violating HRS § 712-1200(1)(b) were male. In other words, no women were charged with the offense of prostitution, in violation of HRS § 712-1200(1)(b) in that period.

However, the court in Unnamed Defendant did not rely on statistics, merely footnoted them. Unnamed Defendant, at 1185 n.3. Instead, the court relied on testimony that the police would follow a vehicle and when a "'sexual act is [found] going on,' only the female is arrested." Id. at 1186 (brackets in original). Likewise, the female defendant was arrested while performing a sex act on a male and the male was not arrested. Id. The detective further offered that "'There hasn't been a male arrested . . . since we've been working on the prostitution area.'" Id. It was clear from this testimony that sellers of

sexual conduct were being arrested and charged, whereas buyers were being released without consequences.

Here, the stipulation indicates that buyers of sexual conduct were being charged under HRS § 712-1200(1)(b), and sellers of sexual conduct were being charged under HRS § 712-1200(1)(a). These statistics do not demonstrate that there are similarly situated female patrons of prostitution that the State is not pursuing.

Tanaka has not shown either through testimony or statistics that HRS § 712-1200(1)(b) has been enforced unequally on the basis of gender. Therefore, Tanaka has failed to meet his burden to prove the State is declining enforcement against women similarly situated, or that Tanaka's selection was deliberately based upon an unjustifiable standard. Thus, Tanaka's argument that the District Court erred in denying and denying in part the Motions to Dismiss is without merit.

      2.    The District Court Clearly Erred in FOFs Nos. 8, 9, 13, and 14.

Tanaka also contends that the District Court erred in its findings, alleging a series of technical errors in the labeling of exhibits or the contents therein. While we acknowledge these technical errors we find they have no bearing on our decision and agree with Tanaka that the errors "do not significantly affect the district court's ruling denying Tanaka's motion in part (or granting Tanaka's motion in part)."

For the foregoing reasons, we vacate the District Court of the First Circuit, Honolulu Division's October 6, 2015 "Findings of Fact, Conclusions of Law and Order (1) Granting Defendant Sasai's Motion to Dismiss for Violation of Defendant's Right to Due Process and Equal Protection of the Laws; and (2) Denying Defendant Sasai's Motion to Dismiss for Violation of Defendant's Right to Equal Protection of the Laws; and (3) Granting in Part and Denying in Part Defendant Tanaka's Motion to Dismiss for Violation of Defendant's Right to Due Process and Equal Protection of the Laws" to the extent that it

10

granted the Motions to Dismiss, and remand it to the District Court for further proceedings consistent with this order.

DATED: Honolulu, Hawai'i, June 30, 2017.

On the briefs:

Brian  R. Vincent,
Deputy Prosecuting Attorney,
for Plaintiff-Appellant/
Cross-Appellee.

Presiding Judge

James S. Tabe,
Deputy Public Defender,
for Defendant/Appellee/
Cross-Appellant Tanaka and
Defendant/Appellee Sasai.

Associate Judge